**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RJ BRANDS, LLC,<br>　　　　　*Plaintiff,*<br>v.<br>BLOOMBERG, L.P.,<br>　　　　　*Defendant.* | Civil Action No. 21-1908<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court by way of Plaintiff RJ Brands, LLC's, d/b/a Chefman, ("RJ Brands") motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Defendant Bloomberg, L.P.'s ("Bloomberg") counterclaim that a trademark registration is invalid because Plaintiff obtained it through fraud on the United States Patent and Trademark Office ("USPTO"). D.E. 38. The Court has considered the submissions in support of and in opposition to the motion,[1] and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**.

**I. BACKGROUND**

  Plaintiff is a New Jersey limited liability company. D.E. 20 ("Am. Answ.") at 10 ¶ 2.[2] Plaintiff owns a trademark that is registered with the USPTO with the registration number

---

[1] Plaintiff's brief in support of the motion, D.E. 38-1, will be referred to as "Pl.'s Br." Defendant's brief in opposition, D.E. 45, will be referred to as "Opp'n." Plaintiff's reply, D.E. 46, will be referred to as "Pl.'s Reply."

[2] Defendant's Amended Answer uses numbered paragraphs, but the series restarts at the beginning of the counterclaims. For the sake of clarity, the Court refers to the page number of the pleading along with the paragraph.

5,897,766 ("'766 Registration" or "CHEF IQ mark").³ *See id.* at 10-11 ¶¶ 6-7.  As part of its application for the '766 Registration, Plaintiff submitted to the USPTO a Statement of Use, representing that Plaintiff was using the mark in commerce in connection with certain classes of goods and services, including (1) a smartphone social networking app (Class 9); (2) programmable cooking devices (Class 11); and (3) a website on which users can interact with each other and remotely operate those cooking appliances (Class 42).  *See id.* at 11 ¶¶ 10-11, 12 ¶ 13.  Plaintiff also submitted five specimens that purported show screenshots of the app in Class 9.  *See id.* at 13-14 ¶¶ 18-19.

On March 5, 2019, the USPTO rejected the application because Plaintiff had not submitted specimens showing that the mark had been used in commerce in connection with the goods and services in Classes 11 and 42.  *Id.* at 14 ¶ 20.  On September 5, 2019, Plaintiff responded by submitting new specimens.  *Id.* at 14 ¶ 21.  Plaintiff submitted photographs that appeared to depict packaging and other product-related materials, as well as screenshots from a website, all of which bore the CHEF IQ mark.  *Id.*; D.E. 20-2 at 2-14.  Plaintiff swore in a declaration that those products and the website were in commerce as of February 7, 2019, the date on which its initial application was due.  Am. Answ. at 14-15 ¶ 21.  Defendant alleges that those representations were false.  *Id.* at 12 ¶ 13; 15-16 ¶¶ 22-26.  Defendant refers the Court to a January 6, 2019 press release, attached to the Amended Answer, which promotes a "Chef IQ app" as "available for iOS and Android in the summer of 2019[]."  D.E. 20-1 at 1; Am. Answ. at 12 ¶ 14.  The same press release refers readers to chefman.com, not chefiq.com, for more information.  *Id.* at 13 ¶ 15; *cf.* D.E. 20-1 at 2.  The release does not mention any cooking devices bearing the brand of "Chef IQ."  Am. Answ. at

---

³ Plaintiff alternatively refers to the '766 Registration as "the CHEF IQ mark."  *E.g.*, Pl.'s Br. at 6.  The Court will use the latter term to refer to the mark before its registration.

13 ¶ 16.  Further, Defendant's investigation revealed that there was no active website with the domain name "chefiq.com" in July of 2019.  *Id.* at 13 ¶ 15.  Finally, an Instagram post dated February 20, 2020, asked Plaintiff's followers to contribute money through the website Kickstarter to fund the development of the first cooking appliance of the Chef IQ line of products.  *Id*. at 13 ¶ 16.

Crediting Plaintiff's representations, the USPTO accepted the Statement of Use and registered the CHEF IQ mark as the '766 Registration on September 24, 2019.  *Id.* 16 at ¶ 27.

Plaintiff filed its Complaint on February 4, 2021.  D.E. 1 ("Compl.").  Plaintiff accuses Defendant of using a trademark that infringes upon the '766 Registration.  Am. Answ. at 10 ¶¶ 6-8.  Plaintiff brings claims against Defendant for violating the Lanham Act, 15 U.S.C. § 1051, *et seq.*; unfair competition; false designation of origin; and related state law claims.  Compl. ¶ 1.  Defendant filed its Amended Answer on May 5, 2021.  In its second counterclaim, Defendant asks the Court to declare the '766 Registration void *ab initio* because Plaintiff committed fraud while procuring its registration.  Am. Answ. at 18-19.  The current motion followed.  D.E. 38.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  "Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint."  *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012); *see also County of Hudson v. Janiszewski*, 351 F. App'x 662, 667-68 (3d Cir. 2009).  To withstand a Rule 12(b)(6) motion to dismiss, a counterclaim must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A counterclaim has such plausibility when the defendant

"pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a [plaintiff] has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

In evaluating the sufficiency of a counterclaim, district courts must separate the factual and legal elements. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). A court "must accept all of the [counterclaim's] well-pleaded facts as true." *Id.* at 210. A court, however, does not credit labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court may also rely on exhibits attached to the answer. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

In addition, because the counterclaim sounds in fraud, Federal Rule of Civil Procedure 9(b) applies. *See Smith v. Dir.'s Choice LLP*, No. 15-00081, 2017 WL 2955347, at *7 (D.N.J. July 11, 2017); *Asian & W. Classics B.V. v. Selkow*, 92 U.S.P.Q.2d 1478, 1478 (T.T.A.B. 2009). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This is a higher standard than that imposed by Rule 12(b)(6). *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged

fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III. ANALYSIS

In its second counterclaim, Defendant asks the Court to declare the '766 Registration invalid because Plaintiff intentionally defrauded the USPTO in securing its registration. Am. Answ. at 17-19 ¶¶ 31-36. Plaintiff argues that Defendant has failed to adequately plead that Plaintiff intended to defraud the USPTO. Pl.'s Br. at 3.

"The Lanham Act provides that a third party may petition for cancellation of a registered trademark if the registration was procured by fraud[.]" *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 174 (3d Cir. 2017) (citing 15 U.S.C §§ 1064(3), 1120). Specifically, the Lanham Act provides that

> [i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119.

To prevail on such a claim, a party must show "that the 'applicant or registrant knowingly ma[de] a false, material representation with the intent to deceive the [US]PTO.'" *Covertech Fabricating*, 855 F.3d at 175 (alteration in original) (quoting *In re Bose Corp.*, 580 F.3d 1240,

5

1245 (Fed. Cir. 2009)); *Nonpareil Corp. v. Reddy Raw, Inc.*, No. 08-2091, 2010 WL 5137413, at *1 (D.N.J. Dec. 9, 2010).  The challenged representation must have been made "in connection with an application for a registered mark." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 216 n.3 (3d Cir. 2021).

In *Iqbal*, the Supreme Court explained that Rule 9(b)'s use of the word "generally" to describe how a party's state of mind may be pled is to be understood in the context of the preceding sentence. *Iqbal,* 556 U.S. at 686.  The first part of Rule 9(b) addresses "the circumstances constituting fraud," and requires a party bringing a claim of fraud to articulate the claim's factual basis with a higher degree of precision and specificity than a typical pleading. *Id.*  The second part of the Rule, which addresses a party's subjective mental state, does not have the same requirement. *Id.*  Thus, the second part of "Rule 9 merely excuses a party from pleading … intent under an elevated pleading standard." *Id.*  Rather, state of mind must be pled in a manner that satisfies Rule 8. *Id.* at 687.

The Federal Circuit has explained that a claim of fraud on the USPTO "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [US]PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).  A court must be mindful that "[m]ere negligence is not sufficient to infer fraud or dishonesty." *Bose*, 580 F.3d at 1244 (alteration in original) (quoting *Symbol Techs., Inc. v. Opticon*, 935 F.2d 1569, 1582 (Fed. Cir. 1991)).  Even gross negligence does not suffice. *Bose*, 580 F.3d at 1244.  Instead, "a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive

6

the [US]PTO." *Id.* at 1245.  Accordingly, the allegation that a registrant "should have known" and disclosed certain information but failed to, is not enough to state a claim for cancellation of a registered trademark. *Zoba Int'l Corp. dba CD Digit. Card v. DVD Format/Logo Licensing Corp.*, No. 92051821, 2011 WL 1060727, at *3 (T.T.A.B. March 10, 2011); *see also Pretty Pale, Inc. v. Jads Int'l, LLC*, No. 91222470, 2017 WL 4155296, at *11 (T.T.A.B. Sept. 15, 2017).

The Court finds that Defendant has sufficiently pled that Plaintiff intended to defraud the USPTO.  Defendant's Amended Answer describes with particularity the representations made to the USPTO and directly alleges that those representations were knowingly false and made with the intent to mislead the USPTO.  *E.g.*, Am. Answ. at 17 ¶¶ 32-33.  Defendant's well-pled allegations, in light of the statements contained in the exhibits to the Amended Answer, reflect that at the time that Plaintiff submitted its application to the USPTO, Plaintiff had not developed a CHEF IQ app, was not selling Chef IQ-branded cookers, and did not have a Chef IQ website, despite its contrary representations to the USPTO.  The Court finds the inference that Plaintiff intended to mislead the USPTO when it made the inaccurate representations in its Statement of Use and submitted its supporting specimens to be adequate.  *See Kashmir Crown Baking LLC v. Kashmir Foods, Inc.*, No. 2:12-01780, 2013 WL 12142539, at *11 (D.N.J. Jan. 18, 2013) ("[E]ven under the demanding standard set by *Bose*, the submission of a 'doctored-up specimen' to the [US]PTO, if proven, could constitute evidence of deceptive intent.").

The Court further agrees with Defendant that many of the cases on which Plaintiff relies are distinguishable because they were decided at later stages in the litigation rather than on a motion to dismiss.  *See, e.g.*, *Pretty Place, Inc.*, 2017 WL 4155296, at *11; *Multi Access Ltd. v. Wang Lao Ji Food & BeverageSubsidiary*, No. 9205495, 2014 WL 1649333, at *8 (T.T.A.B. Apr. 4, 2014).  Similarly, other cases cited by Plaintiff are inapposite.  *See, e.g.*, *Asian & W. Classics*

7

*B.V.*, 92 U.S.P.Q.2d at 1479-80 (holding claim inadequately pled where it was premised solely upon claimant's information and belief and did not specify factual basis for belief). Plaintiff also conflates the burden of proof at trial with the pleading standard. *See, e.g.*, Pl.'s Br. at 6 (discussing the clear and convincing standard of proof).

Plaintiff maintains that even if its representations to the USPTO were false, the Court cannot reasonably infer that Plaintiff intended to defraud the USPTO. *Id.* at 6-8. For the reasons stated above, the Court disagrees. The Court finds it less plausible that Plaintiff's false statements were honest mistakes. *Bose*, 580 F.3d at 1243. Plaintiff's alleged "errors" were not misapprehensions of technical detail—they were misrepresentations of important facts.

## IV.     CONCLUSION

For the reasons stated above, Plaintiff's motion is denied. An appropriate Order accompanies this Opinion.

Dated: March 8, 2022

                                                                              _____
                                                                              John Michael Vazquez, U.S.D.J.